DISTRICT COURT OF GUAM

TERRITORY OF GUAM

ANGELA DEWITZ, as Special Administrator of the Estate of Reynaldo G. Garcia, Deceased

Plaintiff,

vs.

TELEGUAM HOLDINGS, LLC, dba GTA TELEGUAM, a Limited Liability Company,

Defendant.

CIVIL CASE NO. 11-00036

**REPORT & RECOMMENDATION**
re Teleguam's Motion for Summary Judgment (ECF No. 100)

Pending before the court is a Motion for Summary Judgment, filed by Defendant Teleguam Holdings, LLC d.b.a. GTA Teleguam, a Limited Liability Company (hereinafter "Teleguam"). *See* Docket No. 100. The Motion to Dismiss was referred to the below-signed Magistrate Judge on December 9, 2013, from Chief Judge Ramona V. Manglona.[1] *See* Docket No. 109. Therein, Teleguam requests summary judgment on the Plaintiff's disability claims because (a) said claims are not timely; (b) Mr. Garcia was not substantially limited in any major life activity; and/or (c) Mr. Garcia was not a "qualified individual" as defined by the Americans with Disability Act ("ADA"). Additionally, Teleguam seeks summary judgment on the breach of contract claim on the basis that Teleguam did not breach the Employment Agreement since Mr. Garcia resigned from his position and therefore Teleguam was not required to give him any notice. The court had the opportunity to

---

[1] Chief Judge of the United States District Court for the Northern Mariana Islands, sitting by designation.

review all pertinent pleadings filed herein and hear argument from counsel on February 7, 2014. Based on the analysis set forth *infra*, the below-signed Magistrate Judge hereby recommends Chief Judge Manglona deny the Motion for Summary Judgment.

## BACKGROUND and FACTS

Decedent Reynaldo Garcia ("Garcia") was employed with Guam Telephone Authority beginning about 1994. Second Am. Compl. ("SAC") at ¶9, ECF No. 84. The Guam Telephone Authority's assets were later purchased by Defendant Teleguam Holdings, LLC d.b.a. GTA Teleguam, a Limited Liability Company (hereinafter "Teleguam"). *Id.* On November 13, 2004, Garcia and Teleguam entered into an Employment Agreement effective January 1, 2005.[2] *See* Ex. A to Mot. for Summ. J., ECF No. 100 at 46. Pursuant to Attachment A to the Employment Agreement, Garcia's job title was "Team Member" with the Outside Plant & Engineering Department. *Id.* at 50. His job description indicated that Garcia was to "[p]erform installation and repair work on the network for internal and external customers." *Id.*

On June 2, 2005, Mr. Garcia was allegedly injured in a car accident while in the course and scope of his employment with Teleguam. SAC at ¶22. Mr. Garcia contends that his disability had been caused in part from injuries sustained in this accident." *Id.*

On February 7, 2006, Mr. Garcia saw Dr. Demetrio Suguitan, complaining of neck and back pain. *See* Ex. C to Mot. for Summ. J., ECF No. 100 at 57. According to Dr. Suguitan's report, Mr. Garcia's period of "temporary disability" was from February 8-14, but Mr. Garcia could return to "light work" on February 8th. In box 31, which inquired into the physical limitations and type of work Mr. Garcia could perform if resuming light work, Dr. Suguitan wrote "[patient] is allowed to do trouble shooting; and changing of plastic nids." *Id.* Dr. Suguitan also imposed a weight limit of less than 10 pounds. *Id.*

On February 8, 2006, Mr. Garcia returned to Dr. Suguitan, who imposed the further limitations of "no prolonged sitting" and "no prolonged standing." *See* Ex. D to Mot. for Summ. J.,

---

[2] January 1, 2005, is the date of the closing of the Asset Purchase Agreement between Guam Telephone Authority and Teleguam. M. Cruz Decl. at ¶5, ECF No. 100 at 34.

ECF No. 100 at 59.

On February 10, 2006, Teleguam reassigned Mr. Garcia from his position with the Outside Plant and Engineering Department to the Client Services Department to "accommodate" Mr. Garcia's status by giving him "lighter duties and responsibilities." *See* Ex. E to Mot. for Summ. J., ECF No. 100 at 61.

On February 14, 2006, Teleguam wrote to Mr. Garcia, notifying him that effective said date, he would be placed on 12 weeks of leave under the Family Medical Leave Act ("FMLA"). *See* Ex. F to Mot. for Summ. J., ECF No. 100 at 63. The decision to do so was based on Mr. Garcia's revelation that he was "unable to perform the light duty assigned" to him at the Client Services Department. *Id.*

Mr. Garcia did not return to work upon the expiration of his FMLA leave on May 7, 2006. On that same date, Teleguam completed a Personnel Action Form which indicated Mr. Garcia's "Termination of Employment" effective "May 7, 2006 COB." *See* Ex. I to Mot. for Summ. J., ECF No. 100 at 73.

On June 12, 2006, Teleguam wrote to Mr. Garcia to inform him that his FMLA leave ended on May 7, 2006. *See* Ex. J to Mot. for Summ. J., ECF No. 100 at 75. The letter further stated: "You did not return to work at the expiration of the leave and you have no other leave left. Pursuant to GTA policy, we deem you have voluntarily resigned." *Id.*

On April 5, 2007 – 297 days after the June 12, 2006 letter, Mr. Garcia filed a charge of discrimination with the EEOC. This suit was thereafter initiated on November 28, 2011.

On October 23, 2013, the Plaintiff filed the SAC which asserted three causes of action. The first two claims were brought under the ADA, and the third claim was for Breach of Employment Agreement.

## ANALYSIS

1. <u>Motion for Summary Judgment - Legal Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55, (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157. The moving party must identify the pleadings, depositions, affidavits, or other evidence which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[ ]'s favor, could convince a reasonable jury to find for the plaintiff[ ]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).

2. <u>Whether ADA claims are timely</u>

Teleguam first argues that the first and second claims of the SAC, which assert claims under the ADA based on discrete employment actions, are time-barred. The first claim seeks damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses. The second claim seeks punitive damages based on the allegation that Teleguam engaged in discriminatory practices with malice and/or with reckless indifference to Mr. Garcia's rights.

Under the ADA, a plaintiff shall file an employment discrimination charge with the EEOC

///

either 180 or 300 days[3] after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). But what is an "unlawful employment practice" and when has such a practice "occurred?" The answer to these questions "varies with the practice" according to the Supreme Court's decision in *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 110 (2002).[4]

The Supreme Court answered the second question first and stated that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* The Supreme Court stated that "[a] party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.*

With regard to what constitutes an "unlawful employment practice," the plaintiff in *Morgan* asserted that the word "practice" meant an ongoing violation which can recur over a period of time. *Id.* The Supreme court rejected this argument, noting that the statute (42 U.S.C. § 2000e-2) "explain[ed] in great detail the sorts of actions that qualify as 'unlawful employment practices' and include[d] among such practices numerous discrete acts." *Id.* at 111. The Supreme Court recognized that it had "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* The Supreme Court thus concluded

---

[3] In response to the filing of the First Amended Complaint ("FAC"), Teleguam filed a Motion for Summary Judgment which asserted that the action was time-barred because Mr. Garcia failed to timely file his discrimination charge with the EEOC within 180 days after the alleged unlawful employment practice occurred as mandated by 42 U.S.C. § 2000e-5(e). *See* ECF No. 7. The below-signed magistrate judge eventually concluded, and Chief Judge Manglona affirmed, that the time frame for filing the discrimination charge with the EEOC was extended from 180 days to 300 days after the alleged unlawful employment practice occurred because Mr. Garcia had instituted his claim with Guam Department of Labor ("GDOL") before the expiration of the 300-day extended filing period and the GDOL had thereafter terminated its proceedings. *See* ECF Nos. 42 and 49.

[4] In *Morgan*, the plaintiff alleged he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment. *Id.* at 104. Although *Morgan* was an action brought under Title VII of the Civil Rights Act, the analysis in *Morgan* is applicable here since the ADA employs the same statute of limitations as that contained in Title VII. 42 U.S.C. § 12117(a) (adopting the "powers, remedies, and procedures set forth in" 42 U.S.C. 2000e-5(e)). *See also Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (Under Title VII and the ADA, "failure to file an EEOC charge within the prescribed 300-day period . . . is treated as a violation of a statute of limitations[.]"), *overruled on other grounds by Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (*en banc*).

that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.*

Accordingly, the Supreme Court held that the statute precludes recovery for discrete acts of discrimination or retaliation that occurred outside the statutory time period. However, when analyzing a claim alleging a hostile work environment, court may consider behavior alleged outside the statutory time period for purposes of assessing liability so long as an act contributing to that hostile environment takes place within the statutory time period. The Supreme Court stated:

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *Each discrete discriminatory act starts a new clock for filing charges alleging that act.* The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113 (emphasis added).

The Supreme Court further stated that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

Here, Mr. Garcia filed his EEOC complaint on April 5, 2007.[5] On April 9, 2007, Mr. Garcia filed a discrimination claim with GDOL, which accepted and terminated it on the same day. Three hundred days prior to the April 5, 2007 filing with the EEOC was June 9, 2006. Thus, under the 300-day statute of limitations, any ADA claim based on a discrete act that occurred prior to June 9, 2006, is time barred. In this case, the SAC asserted the following acts constitute discrimination against Mr. Garcia:

///

///

---

[5] April 5, 2007 was 297 days after Mr. Garcia received the June 12, 2006 letter.

1. GTA failed to engage in the required interactive process[6] in good faith with Mr. Garcia (SAC at ¶26);

2. GTA refused to allow Mr. Garcia to return to his regular job with the same type of reasonable accommodations he had been provided in the past (SAC at ¶27);

3. GTA placed Mr. Garcia on Family Medical Leave without pay, effective February 14, 2006 (SAC at ¶30);

4. GTA did not place Mr. Garcia on worker's compensation benefits (SAC at ¶32);

5. GTA insisted that Mr. Garcia obtain certification from a health care provider that he was able to resume work despite information it had from another doctor that Mr. Garcia was at his pre-accident level (SAC at ¶39);

6. GTA terminated Mr. Garcia's employment on May 7, 2006 (SAC at ¶44); and

7. GTA failed to give Mr. Garcia any written notice of the termination (SAC at ¶47).

The acts listed in 1 through 5 above all occurred prior to June 9, 2006. Thus, any ADA claim based on such acts are time-barred, and the court recommends Chief Judge grant Teleguam's Motion for Summary Judgment as to such acts.

Whether acts 6 and 7 are also time-barred is not quite so clear. Although it would appear that such acts also occurred prior to June 9, 2006, the Plaintiff contends that the equitable doctrines of tolling or estoppel should apply to preclude the granting of summary judgment.

The SAC asserts that on June 12, 2006, Teleguam informed Mr. Garcia by letter that they deemed him to have voluntarily resigned since his FMLA leave ended on May 7, 2006, and he did not return to work at the expiration of said leave. SAC at ¶41. Based on this letter, Plaintiff believed Teleguam had "constructively wrongfully terminated Mr. Garcia" on or about June 12, 2006. *Id.* at ¶42. "However, based on discovery conducted in May 2013, [Plaintiff] learned for the

---

[6] "The interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000). This obligation is "triggered by an employee . . . giving notice of the employee's disability and the desire for accommodation." *Barnett*, 228 F.3d at 1114. The process requires good faith communication by both parties as a means of achieving the shared goal of identifying an accommodation that would enable the employee to perform his job effectively. *Id.*

first time that GTA had terminated Mr. Garcia on May 7, 2006" on the basis of his disability. *Id*. at ¶¶43-44. The SAC further alleges that Teleguam "misrepresented that it considered that Mr. Garcia had voluntar[ily] resigned when it had actually terminated him; and it should be estopped from contending that he was terminated earlier than June 12, 2006, for the purposes of any statute of limitations or any other similar defenses." *Id.* at ¶45.

The Plaintiff argues that Teleguam is estopped from raising a statute of limitations defense as a result of its misrepresentations to Mr. Garcia. Based on the June 12, 2006 letter, Mr. Garcia believed GTA deemed him to have resigned on said date, when in fact it had terminated him on May 7, 2006. The Plaintiff contends that this letter deceived Mr. Garcia into believing and relying to his detriment that he was separated from Teleguam on June 12, 2006. Unfortunately, the Plaintiff did not learn of Teleguam's termination of Mr. Garcia until discovery was conducted in May 2013.

Procedurally, the question of estoppel is one of fact, thereby being inappropriate for the purposes of summary judgment. *See Golden v. Faust*, 766 F.2d 1339, 1341 (9th Cir. 1985) ("[o]nce it is determined that elements of estoppel have been sufficiently [pled], the question of whether the statute of limitations is tolled by conduct of defendant is one of fact which should be left for resolution by the trier of fact"). Estoppel becomes a question of law appropriate for summary judgment when facts are not in dispute. *See, e.g., Sawyer v. County of Sonoma*, 719 F.2d 1001, 1006 n.12. (9th Cir. 1983); *Shamrock Development Co. v. City of Concord*, 656 F.2d 1380, 1386 (9th Cir. 1981) ("[e]quitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from the undisputed facts").

Here, whether equitable estoppel should apply against Teleguam involves questions of fact and credibility determinations which must be resolved at trial. For instance, Teleguam maintains that Mr. Garcia's FMLA leave ended on May 7, 2006, and he did not report back to work at the expiration of said leave. Pursuant to the Employee Handbook, failure to report to work for two consecutive workdays and failure to notify one's supervisor in advance of the reason for the failure to report to work may result in Teleguam considering the employee to have resigned. The Plaintiff contends that if the FMLA leave ended on May 7th, Teleguam could not have validly considered Mr. Garcia to have resigned until either May 9 or 10, two days after he was supposed to report for

work. Yet, Teleguam completed a Personnel Action Form for Mr. Garcia on May 7, 2006; this Personnel Action Form indicated that Mr. Garcia had been "terminated." The box marked "Termination of Employment" was checked instead of the box marked "Resign." Did Teleguam terminate (*i.e.*, fire) Mr. Garcia, or did Teleguam deem him to have resigned? If Teleguam believed Mr. Garcia resigned, why wasn't the "Resign" box checked instead? Why was the Personnel Action Form completed on May 7, 2006, instead of waiting two consecutive workdays thereafter as permitted in the Employee Handbook? Different conclusions can be drawn from these facts. One such conclusion supports the Plaintiff's theory of the case: Teleguam did not deem Mr. Garcia to have resigned but instead terminated him because of his disability. These facts could reasonably support the Plaintiff's claim that Teleguam discriminated against Mr. Garcia. Teleguam did not wait the two consecutive workdays to see if Mr. Garcia would return but instead completed the Personnel Action Form on the very day Mr. Garcia's FMLA leave expired. There is a genuine issue of material fact with regard to the issue of estoppel. Accordingly, the below-signed judge recommends Chief Judge Manglona deny the Motion for Summary Judgment as to 6th and 7th discrete acts which form the bases of the Plaintiff's ADA claims.

    3.    <u>Whether Mr. Garcia was "substantially limited" in any major life activity</u>

If any of the discrete acts are not time-barred, Teleguam next contends that Mr. Garcia fails to meet the definition of "disabled" since he was not "substantially limited" in any major life activity.

Under the ADA, Plaintiff must first establish that Mr. Garcia had a disability. An individual is disabled if he "(1) has a physical or mental impairment that substantially limits one or more of [his] major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); 42 U.S.C. § 12102(2). Here, only the first definition of disability is applicable since the SAC only alleges that Mr. Garcia was disabled.[7] *See* SAC at ¶21 ("since at least 1994, Mr. Garcia

---

[7] The Plaintiff had filed a Motion for Clarification or, in the Alternative, Motion for Leave to File Third Amended Complaint. *See* ECF No. 106. Therein, the Plaintiff requested that the court issue an order confirming that the SAC set forth claims for disability discrimination under

was disabled; more particularly, from that time until his death, he had chronic spine pain with radiculopathy[.]")

Whether a person is disabled under the ADA is an "individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). To determine whether a plaintiff is actually disabled under the ADA's definition, courts follow a three-step analysis. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, the court must determine whether a plaintiff has a "physical or mental impairment" as defined by the ADA. *Id.* Second, the court must identify the life activity upon which plaintiff relies, and determine whether it constitutes a major life activity under the ADA. *Id.* Finally, the court must decide whether a plaintiff's impairment substantially limits his ability to perform the identified major life activity. *Id.* at 631 and 639; *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008). "An impairment is a disability [within the meaning of the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 20 C.F.R. § 1630.2(j)(1)(ii) (2005).

According to the ADA regulations, a "physical impairment" includes: "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h). Here, the first step is met since the SAC asserts that Mr. Garcia had "chronic spine pain with radiculopathy." As such, Mr. Garcia had a condition that affected his neurological and musculoskeletal system.

The second step is to identify the life activity upon which the Plaintiff relies, and determine whether it constitutes a major life activity under the ADA. The Supreme Court has stated that the word "major" means important, *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (1998), but that major life activities are not limited to those aspects of a person's life that have a public, economic, or daily character. *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998).

---

all three prongs of the disability definition or, alternatively, allow her to file a Third Amended Complaint to assert such claims. On January 10, 2014, the below-signed judge orally denied the motion. *See* Minutes, ECF No. 119.

The ADA does not define the term "major life activity," but the EEOC regulations provide the following examples of major life activities: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i) (2005). This list is illustrative and not exclusive. *Bragdon*, 524, U.S. at 638-39. EEOC guidance also lists sitting, standing, lifting, and reaching. 29 C.F.R. §1630.2(i) app. (2005).

According to the SAC, Mr. Garcia's disability "substantially limited him from performing manual tasks and substantially limited him as to various major life activities including but not limited to lifting and sitting." SAC at ¶21. Based on a reading of the SAC, the Plaintiff asserts Mr. Garcia was substantially limited in (1) performing manual tasks, (2) lifting and (3) sitting. The Plaintiff also asserts that Dr. Suguitan's February 8, 2006 report supports a claim that Mr. Garcia was substantially limited in standing because it notes that he should avoid "prolonged standing."[8] Since these activities are all listed as examples of major life activities in the EEOC regulations, the second step is satisfied and the court can proceed to the third step, which is to determine whether Mr. Garcia's impairment substantially limited his ability to perform the identified major life activity.

"[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota*, 534 U.S. at 198. "[H]ousehold chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should [be] part of the assessment of whether [a claimant] was substantially limited in performing manual tasks." *Id.* at 202. Additionally, the Ninth Circuit in *Thornton v. Mcclatchy Newspapers, Inc.*, 261 F.3d 789 (9th Cir. 2001), affirmed the district court's finding that a person who "was able to perform a wide range of manual tasks, including grocery shopping, driving, making bends, doing laundry and dressing herself" was not substantially limited in performing manual tasks. *Id*. at 797.

---

[8] In its Motion for Summary Judgment, Teleguam also includes the following additional activities: working, driving, sleeping, walking and bending. *See* Mot. for, ECF No. 100 at 11. Because these activities are not mentioned in the SAC, the court will not address these activities.

In this case, during her deposition the Plaintiff stated that Mr. Garcia was capable of performing many activities that are of central importance to most people's daily lives. Mr. Garcia would help cook, help do the dishes, and help wash clothes. Ex. K to Mot. for Summ. J., ECF No. 100 at 78. Mr. Garcia would also wash the family cars and did the outdoor chores such as mowing the lawn or using the weed eater. *Id.* at 61. Mr. Garcia could generally do all the types of manual tasks associated with daily living. Accordingly, the court finds that Mr. Garcia was not substantially limited in performing manual tasks.

Was Mr. Garcia's ability to lift substantially limited? The February 7 and 8, 2006 reports prepared by Dr. Suguitan indicated that Mr. Garcia should not be lifting anything more than 10 pounds. *See* Exs. C and D to Mot. for Summ. J., ECF No. 100 at 57 & 59. Teleguam contends that such a restriction does not meet the standard of substantially limiting the major life activity of lifting. Teleguam cites to non-binding case law from other circuits and districts holding that 10 pound lifting limitations did not substantially limit a major life activity. *See* Mot. for Summ. J., ECF No. 100 at 14.

The Plaintiff, on the other hand, asserts that this is an issue of material fact for the jury to decide. The court concurs. The Plaintiff's deposition testimony notes that she "had to carry a lot of things" when they had their son because of Mr. Garcia's back pain, including being the one to take the baby stroller out. *See* Ex. K to Mot. for Summ. J., ECF No. 100 at 84. Based on her testimony and Dr. Suguitan's reports, the Plaintiff has presented sufficient evidence to establish a genuine issue of material fact as to whether the restriction on lifting no more than 10 pounds substantially limited a major life activity of Mr. Garcia. *See Wheaton v. Ogden Newspapers, Inc.*, 66 F. Supp.2d 1053, 1061-62 (N.D. Iowa 1999) (genuine issue of material fact where plaintiff was unable to lift object weighing more than 10 pounds); *Martin v. Lockheed Martin Missiles & Space*, 1998 WL 303089 (N.D. Cal. Apr. 1, 1998) (finding genuine question of material fact as to whether plaintiff with a ten-pound lifting restriction is substantially limited in the major life activity of lifting).

As to the major life activities of sitting and standing, Dr. Suguitan's reports indicate that Mr. Garcia should avoid "prolonged sitting" and "prolonged standing." Teleguam notes that during

her deposition, the Plaintiff could not give any precise time frames as to said activities. The Plaintiff could only state that Mr. Garcia could not sit through a movie that was an hour and a half in duration. *See* Ex. K to Mot. for Summ. J., ECF No. 100 at 101. The modifier "prolonged" is ambiguous and imprecise. However, viewing the facts in the light most favorable to the Plaintiff, specifically Dr. Suguitan's reports instructing Mr. Garcia to avoid "prolonged sitting" and "prolonged standing," the court finds there is a genuine issue of material fact as to whether Mr. Garcia's disability substantially limited these major life activities.

Viewing the facts in the light most favorable to the Plaintiff, the court finds there are genuine issues of material fact as to whether Mr. Garcia was substantially limited in the major life activities of lifting, sitting and standing. Accordingly, the court recommends Chief Judge Manglona deny the Teleguam's Motion for Summary Judgment on this issue.

  4. <u>Whether Mr. Garcia is a "qualified" individual under the ADA</u>

If Plaintiff proves that Mr. Garcia meets the definition of being disabled, the next issue raised in Teleguam's motion is whether he was a qualified individual under the ADA. To demonstrate a *prima facie* case of employment discrimination, Plaintiff must additionally show that Mr. Garcia was qualified — meaning he could perform the essential functions of his job with or without reasonable accommodation — and that his employer terminated him solely because of his disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); see also 29 U.S.C. § 794(a). "The ADA defines a 'qualified individual' as an individual 'with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006) (emphasis omitted) (citing 42 U.S.C. § 12111(8)). Here, the Plaintiff bears the burden of proving that Mr. Garcia was "qualified." *Id.*

> The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." It does not "include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be considered "essential" for various reasons. *See id.* § 1630.2(n)(2)(i)-(iii). The statute provides that "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3) (requiring

consideration of the amount of time spent performing the function).

*Id.* at 1087.

Teleguam argues that Mr. Garcia is not a "qualified" individual because he could not perform the essential functions of the installer/repairer ("I/R") position. Teleguam contends that Dr. Suguitan limited Mr. Garcia to performing just two functions of the I/R position: troubleshooting and installing plastic nids, with a 10 pound weigh limit. Based on the job description and the declaration of Mr. Garcia's supervisors, Teleguam asserts that troubleshooting and changing plastic nids do not cover the core essential functions of the I/R position. Because Mr. Garcia's medical restrictions prevented him performing the essential functions of his position, such as installing phone lines and conducting any substantive aspect of a repair, Teleguam maintains that Mr. Garcia was not a "qualified" individual under the ADA.

In response, the Plaintiff asserts that Mr. Garcia's medical condition did not affect his ability to do his job. The Plaintiff relies on the deposition testimony of Ronnie Santos, who was Mr. Garcia's supervisor. Mr. Santos testified that even after Mr. Garcia was injured, the only physical task Mr. Garcia could not perform was carrying items that weighed between 11 and 25 pounds, such as a box of wire or a longer ladder. Mr. Santos further attested that Teleguam made reasonable accommodations for Mr. Garcia's inability to lift heavy objects by providing him with assistance with heavy lifting or reassigning him to another job while another employee finished the work. Mr. Santos did not express any dissatisfaction with Mr. Garcia's performance of his job duties.

Teleguam argues that Mr. Santos's assessment of Mr. Garcia's job performance is irrelevant in light of the limitations imposed by Dr. Suguitan. By early February 2006, Teleguam asserts that Mr. Garcia was no longer able to perform the essential functions of his I/R position.

Viewing the current evidentiary record in the light most favorable to the Plaintiff, the court finds there remains a question of fact as to whether Mr. Garcia was a "qualified" individual. Although Dr. Suguitan's reports list the "type of work" Mr. Garcia could perform, there is no indication that Dr. Suguitan's knew what sorts of tasks were required by Mr. Garcia's I/R position. The Plaintiff contends without this knowledge, Dr. Suguitan's could not set forth what an

exhaustive list of things Mr. Garcia was restricted from doing. Additionally, the Plaintiff notes that as of the March 18, 2006 evaluation by Dr. Raymond Taniguchi, Mr. Garcia "should be back to his pre-accident level." Thus, while Mr. Garcia's job performance may have been temporarily limited in early February 2006 as noted by Dr. Suguitan, by mid-March 2006 Dr. Taniguchi had determined that Mr. Garcia was at his pre-accident level and thus "qualified" to perform the essential functions of his I/R position had Teleguam permitted him to return to work. Accordingly, the court recommends Chief Judge Manglona deny the Motion for Summary Judgment as to this issue.

5. <u>Summary judgment as to breach of contract claim</u>

In a separate Report & Recommendation, the below-signed judge recommended the Chief Judge grant Teleguam's Motion to Dismiss the Breach of Contract claim with prejudice. If the court adopts said recommendation, Teleguam's Motion for Summary Judgment on this issue would be moot. If, however, the below-signed judge's recommendation is declined, the court recommends Teleguam's Motion for Summary Judgment on this issue be denied.

Count 3 of the SAC accuses Teleguam of breaching the Employment Agreement it entered into with Mr. Garcia. The SAC asserts that Teleguam "constructively wrongfully terminated" Mr. Garcia when it gave him the June 12, 2006 letter. SAC at ¶¶41-42. The Plaintiff contends this was a breach of the Employment Agreement because Teleguam failed to give Mr. Garcia the requisite 30 days written notice prior to such termination.

Teleguam maintains that Mr. Garcia resigned when he failed to report to work after his 12-week FMLA leave had expired on May 7, 2006. Teleguam notes that, under the terms of the Employee Handbook, an employee who was on FMLA leave "must contact their [s]upervisor at least one (1) week prior to the end of [his] leave to report on [his] status and intent to return to work." Ex. H to Mot. for Summ. J., ECF No. 100 at 71. Since Mr. Garcia failed to contact his supervisor at least one week prior to the expiration of his leave and because Mr. Garcia failed to report to work upon the expiration of his leave, Teleguam contends it was appropriate for them to deem him as having resigned. The Employee Agreement did not require Teleguam to provide notice in the event of a voluntary resignation, and therefore Teleguam asserts it did not breach its contract with Mr. Garcia.

Here, Mr. Garcia and the Plaintiff have always refuted Teleguam's claim that Mr. Garcia had resigned. Mr. Garcia insisted that he was wrongfully terminated, and the Plaintiff continues to maintain this position. The Plaintiff asserts Mr. Garcia did not resign but was terminated by Teleguam as evidenced in the Personnel Action Form dated May 7, 2006. *See* Ex. I to Mot. for Summ. J., ECF No. 100 at 73.

The court notes that Teleguam placed Mr. Garcia on 12-weeks of FMLA leave "effective February 14, 2006."[9] *See* Ex. F to Mot. for Summ. J., ECF No. 100 at 63. This would mean that Mr. Garcia's last day of FMLA leave would fall on Monday, May 8, 2006. The court finds it curious that Teleguam's Personnel Action Form which was dated May 7, 2006, indicates that Mr. Garcia's "separation" was because of a "Termination of Employment" which was effective "May 7, 2006 COB." How could Mr. Garcia have resigned on May 7, 2006, as Teleguam contends, when he was technically still on FMLA leave on said date. Teleguam's Personnel Action Form would tend to support the Plaintiff's assertion that Mr. Garcia was terminated without cause and therefore would be entitled to 30 days notice under the Employment Agreement.

A liberal reading of the Employee Handbook also does not support Teleguam's assertions. It is undisputed that Mr. Garcia failed to contact his supervisor one week prior to the expiration of his leave to report on his status and intent to return to work. Nevertheless, the Employee Handbook does not specify that an employee's failure to take such action will result in his termination or Teleguam's conclusion that the employee has chosen to resign or separate from the company. Additionally, the Employee Handbook states that "any employee who fails to report to work for two (2) consecutive workdays, and fails to notify his/her supervisor in advance of the reason for the failure to report to work, will be *considered* to have resigned his/her position with the Company." *See* Ex. H to Mot. for Summ. J., ECF No. 100 at 67 (emphasis added). Here, the last day of Mr. Garcia's FMLA leave was May 8, 2006, so he should have reported to work on May 9, 2006, but he did not do so. Although Teleguam could have considered Mr. Garcia to have resigned when he did not report to work, Teleguam's Personnel Action Form indicates that Teleguam had already

---

[9] The court takes judicial notice of the fact that February 14, 2006, fell on a Tuesday.

deemed Mr. Garcia to have "separated" (whether by resignation or termination) from the company effective May 7, 2006. If Teleguam truly believed that Mr. Garcia had voluntarily resigned when he failed to report back to work upon expiration of his FMLA leave, then why did it wait until June 12, 2006 – more than one month later – to send him a letter to advise him of such?

Viewing the facts in the light most favorable to the Plaintiff, the court finds there is a genuine issue of material fact as to whether Mr. Garcia resigned or whether he was terminated without cause, which would require Teleguam to provide 30 days notice prior to such termination. Accordingly, summary judgment as to the breach of contract claim is not warranted.

## RECOMMENDATION

For the reasons stated herein, the court recommends Chief Judge Manglona **GRANT** Teleguam's Motion for Summary Judgment as to the ADA claims of discrimination based on certain discrete acts[10] since such acts are time-barred, and **DENY** the Motion for Summary Judgment in all other respects.

IT IS SO RECOMMENDED.



**/s/ Joaquin V.E. Manibusan, Jr.**
    **U.S. Magistrate Judge**
**Dated: Apr 10, 2014**

---

[10] These discrete acts include the following allegations:

1. GTA failed to engage in the required interactive process in good faith with Mr. Garcia (SAC at ¶26);
2. GTA refused to allow Mr. Garcia to return to his regular job with the same type of reasonable accommodations he had been provided in the past (SAC at ¶27);
3. GTA placed of Mr. Garcia on Family Medical Leave without pay, effective February 14, 2006 (SAC at ¶30);
4. GTA did not place Mr. Garcia on worker's compensation benefits (SAC at ¶32); and
5. GTA insisted that Mr. Garcia obtain certification from a health care provider that he was able to resume work despite information it had from another doctor that Mr. Garcia was at his pre-accident level (SAC at ¶39).