# IN THE DISTRICT COURT OF GUAM

ANGELA DEWITZ, as the Special Administrator of the Estate of Reynaldo G. Garcia, Deceased,

    Plaintiff,

v.

TELEGUAM HOLDINGS, LLC, dba GTA TELEGUAM, a Limited Liability Company,

    Defendant.

Case No. 1:11-cv-00036

**ORDER ADOPTING REPORT & RECOMMENDATIONS**

The magistrate judge has issued two report and recommendations on two motions, a motion to dismiss and a motion for summary judgment. (ECF Nos. 145, 147.) Both reports have been objected to. (ECF Nos. 158, 159.) The Court has reviewed the reports, reviewed the objections, and reviewed the record and the governing law. The Court now adopts both reports in entirety, and the third claim (breach of contract) is therefore dismissed with prejudice.[1] The Court also rules on one area not addressed in those reports: that failure to provide notice of termination is not an adverse employment action here.

## I. BACKGROUND

Plaintiff Angela DeWitz represents Reynaldo Garcia's estate. (ECF No. 84 at 1 (hereinafter "Complaint").) Garcia worked for Defendant Teleguam. (*Id.* at ¶ 9.) In June 2005, Garcia was injured while working. (*Id.* at ¶ 22.)

---

[1] The report on the motion to dismiss recommended granting dismissal of the third claim. The report on the motion for summary judgment stood by this recommendation, but provided additional analysis in the event this Court disagreed with the dismissal recommendation. Because this Court agrees that the third claim should be dismissed under the motion to dismiss, it does not analyze the arguments raised in the summary judgment motion.

1

About a half-year later, in February 2006, Garcia went on Family Medical Leave. (*Id.* at ¶ 30.) Four months later, in June, Teleguam informed Garcia that his Family Medical Leave ended, and because he did not return to work when it ended, Teleguam "deem[ed] [him] to have voluntarily resigned" pursuant to company policy. (*Id.* at ¶ 41.) Despite the claim that Garcia resigned pursuant to company policy, some company documents suggest that Teleguam had instead actually terminated Garcia in May 2006. (*See* ECF No. 100 at 73 (personnel action form indicating that Garcia was "terminat[ed]" in May 2006).)

The complaint raises three claims upon these facts: the first two claims are under the Americans with Disabilities Act ("ADA"), and the third is a claim for Teleguam's breaching Garcia's employment agreement by terminating him without written notice.

## II. STANDARDS

### A. REPORT & RECOMMENDATION

When a party objects to a magistrate judge's report and recommendation, the district court judge "shall make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* She need not review any parts that are not objected to. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

### B. MOTION TO DISMISS

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must allege "sufficient facts to raise" a plaintiff's "right to

relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It must make the right to relief plausible. *Twombly*, 550 U.S. at 557. All allegations must be assumed true, *id.* at 555–56, but legal conclusions need not be, *Iqbal*, 556 U.S. at 678. The factual allegations must "give fair notice and . . . enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). Factual allegations also "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### C. SUMMARY JUDGMENT

On a Rule 56 motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "[t]he court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d. 547, 549–50 (9th Cir. 1994). Additionally, the Court must view the evidence "in the light most favorable to the opposing party." *Mourning v. Family Pubs. Serv., Inc.*, 411 U.S. 356, 382 (1973) (internal quotation marks omitted).

The moving party bears the initial burden of identifying "particular parts of materials in the record" that "demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party also bears the burden of persuasion at trial, . . . it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008). If the moving party meets this burden, the non-moving party must then demonstrate that a genuine issue of

material fact exists. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### III. DISCUSSION

The magistrate judge issued two reports and recommendations: one on the motion to dismiss the breach of employment agreement claim, and the other on the motion for summary judgment on the ADA claims. Each are taken in turn.

#### A. MOTION TO DISMISS BREACH OF EMPLOYMENT AGREEMENT CLAIM

Teleguam filed a motion to dismiss the complaint's third claim, breach of the employment agreement, because the claim is barred by the statute of limitations. The report found that this claim should be dismissed, and DeWitz objects. She argues that the claim was tolled—whether through the discovery rule or through other equitable doctrines—and this tolling makes her claim timely. (*See* ECF No. 158.)

The Court agrees with the report's conclusion. The statute of limitations required that this claim be brought by June 2010. *See* 7 GCA § 11303 (4-year statute of limitations); (ECF No. 145 at 5 (hereinafter "Report on MTD")). It was not, and it is therefore time-barred.

DeWitz cannot avail herself of any of the equitable tolling doctrines. Those doctrines require that the plaintiff not have "a suspicion of wrongdoing" (discovery rule), *Custodio v. Boonprakong*, 1999 Guam 5, ¶ 27, or that the plaintiff had "excusable delay" for not bringing suit (equitable tolling), *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2011), or that the plaintiff actually and reasonably relied on the defendant's conduct (equitable estoppel), *id.* at 1176–77, or that the defendant "lull[ed] the plaintiff into inaction" (*Interdonato* estoppel), *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. Ct. App. 1987).

4

DeWitz cannot plausibly satisfy any of these showings. Garcia knew or should have known, in June 2006, that foul play was afoot. That month, Teleguam sent Garcia a letter informing him that his Family Medical Leave expired in May. (*See* Complaint at ¶ 41; ECF No. 100 at 75.) Teleguam then wrote that "we deem you have voluntarily resigned." (*See* Complaint at ¶ 41; *see also* ECF No. 100 at 75.) This surprised Garcia. He had not resigned, and he immediately believed that Teleguam had wrongfully terminated him because of discrimination. (*See* Complaint at ¶ 42.) From that moment, he knew of his termination and knew it was wrong for at least one reason. So the onus therefore lied with him in exploring the full extent of his legal recourse. There was no excusable delay for not bringing this claim on the termination's procedural deficiencies. Nor was there any reliance or lulling into inaction, because Garcia immediately believed it foul play (Complaint at ¶ 42). Accordingly, the statute of limitations cannot be tolled.

DeWitz's objection asks this Court to consider an analogy: What if this were a dog bite case and the plaintiff sued the dog's owner for negligence, only for discovery to later reveal it to be an intentional tort? (Garcia Objection at 5–6.) Then, she says, "[c]ommon sense and justice" demand that tolling be allowed to assert the intentional tort claim. (*Id.* at 6.) But this analogy falls short because it does not capture the facts. This is not a case where the plaintiff assumed negligence and had no reason to expect intentional harm. This is a case where Garcia immediately knew he was intentionally harmed—Teleguam fired Garcia because of his disability, and Garcia knew it (Complaint at ¶ 42)—so it is not unfair to ask him to determine the scope of his wrongful termination claim within the statute of limitations period.

In short, equitable tolling is merited where "it would be unfair or unjust to allow the statute of limitations to act as a bar to [the plaintiff's] claims." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006). Here, DeWitz asserts essentially two wrongful termination claims: one based on discriminatory firing (the ADA claims) and the other on procedurally improper firing (the

breach of employment agreement claim). Garcia knew immediately of the termination and of his ADA claims. He should have then investigated his rights under the employment agreement. *Cf. Custodio*, 1999 Guam 5 at ¶ 27 ("[O]nce the plaintiff has a suspicion of wrongdroing, . . . he must decide whether to file suit or sit on his rights." (some brackets omitted).) Because DeWitz chose not to, it is not unfair or unjust to bar the breach of employment claim. This claim is therefore dismissed with prejudice as untimely.

### B. MOTION FOR SUMMARY JUDGMENT ON ADA CLAIMS

Teleguam filed a motion for summary judgment on the two ADA claims. The report concluded that summary judgment should not be granted. Teleguam now objects for five reasons.

#### 1. Equitable Estoppel

One reason summary judgment could not be granted was because there was a genuine issue of material fact on the statute of limitations and equitable estoppel. (ECF No. 147 at 7–8 (hereinafter "Report on SJ").) Garcia may have been terminated in May 2006. (*See id.*) Normally, Garcia would have to file his ADA claims with the EEOC within 300 days of the claim's occurrence. *See Shea v. City and Cnty. of San Francisco*, 57 Fed App'x 740, 741–42 (9th Cir. 2003); *Zimmerman v. Oregon Dep't of Justice*, 983 F. Supp. 1327, 1328–29; *see also* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); (ECF No. 100 at 5). He did not—he filed his claim on April 5, 2007, (ECF No. 7-1 at 5), and 300 days before that was June 9, 2006—so his claim could be time barred. (Report on SJ at 7–8.)

But here, unlike the breach of employment agreement claim, there is a colorable equitable tolling argument: Teleguam deceived Garcia into thinking he was fired on June 12, 2006, and tolling until that date would bring his claim within the 300 day deadline. Teleguam did not inform Garcia of his termination until a June 12, 2006 letter, and that letter could reasonably be read as firing him as of that June date. (*See* ECF No. 100 at 75.) Indeed, a later Teleguam letter to the EEOC apparently

6

read the termination letter as firing Garcia as of June 12. (ECF No. 173 at 12.) This evidence demonstrates a genuine factual issue on tolling: Maybe Teleguam deceived Garcia into believing he was fired on June 12, 2006, and Garcia reasonably relied on that deception to his detriment. If it did, equitable estoppel would toll the 300-day clock's beginning until that June date, and the claim would not be time barred. (Report on SJ at 7–8.)

Teleguam's objection advances a contrary position through a reading of the employee handbook, which mandated his termination in May because of his failure to appear for work. (Teleguam Objection at 3–4.) Yet the employee handbook does not reconcile with Teleguam's June termination later, where Teleguam wrote: "This is to inform you that your Family Medical Leave Act (FMLA), ended on May 7, 2006. You did not return to work at the expiration of the leave and you have no other leave left. Pursuant to GTA policy, we *deem* you have voluntarily resigned." (ECF No. 100 at 75 (emphasis added).) Note that the letter used the present tense "deem" and not the past tense. The letter thus reads as Teleguam terminating Garcia now, not acknowledging a past termination. Garcia could have reasonably interpreted the letter to that effect. (*See* ECF No. 122 at 27 (Garcia's declaration indicating he believed he was terminated in June 2006).) And again, Teleguam, in its later letter to the EEOC, interpreted this letter as terminating Garcia on June 12. (ECF No. 173 at 12.)

### 2. Adverse Employment Action of Failure to Give Notice

Teleguam's second objection revives an argument the report neglected: One discrete act—failure to provide notice of termination—is not an adverse employment action, so there is no ADA claim. The report said only that this act may be timely on equitable estoppel grounds; it did not say whether it was an adverse employment action.

7

A prima facie discrimination claim requires that the plaintiff "suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001), *cert denied*, 534 U.S. 888 (2001). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

Clearly, the discrete act of termination is an adverse employment act. But is the failure to provide notice of that termination also one? This Court thinks not. "A tangible employment action in most cases inflicts direct economic harm." *Id.* at 762. Lack of notice does not directly inflict economic harm; it is the termination that inflicts it.

Alternatively, a tangible action may also be one that "materially affects" the "terms, conditions, or privileges of . . . employment," such as by "assigning more, or more burdensome, work responsibilities . . . ." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks omitted). Not providing notice of termination does not fit this category either. Perhaps it incidentally affects a term of employment—namely the term requiring notice—but that does not materially harm the employee. After all, Teleguam could terminate Garcia for *any* (non-illegal) reason (ECF No. 100 at 47 (employment contract providing that Garcia could be terminated without cause)), and so it is not as if Garcia had a right to employment. Moreover, courts in different contexts—actually very different circumstances that are of limited insight here—have found that failure to provide notice is not an adverse employment action. *See Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 91 (D.D.C. 2013); *Drwal v. Borough of West View, Pa.*, 617 F. Supp. 2d 397, 420 (W.D. Pa. 2009); *cf. Harris v. Potter*, 310 F. Supp. 2d 18, 21 (D.D.C. 2004).

To be sure, it may be possible to find an adverse employment act arising from lack of notice. The employment agreement here provides that Teleguam must provide thirty days' prior written

notice before terminating Garcia without cause. (ECF No. 100 at 47.) This thirty day period operates as a quasi-severance; it lets Garcia continue working and collecting a paycheck, while also permitting him to search for his next job. That is an economically valuable term of employment. Yet it is of no matter here. Garcia was not actually working or drawing a paycheck from Teleguam when they resigned him—he was on unpaid leave, with no evidence of him ever returning—so notice would not have helped him financially.

For these reasons, the Court grants summary judgment to the effect that failure to give notice of the termination is not an adverse employment act.

### 3. Evidence of Garcia's Medical Condition

Teleguam's third objection argues that there is no evidence of Garcia's medical condition as of May 2006. (Teleguam Objection at 6.) But nowhere does it squarely argue that in its original motion. (*See* ECF No. 173 at 5; *see generally* ECF No. 100.) The closest it came to that was its argument that there was no evidence that Garcia was a "qualified individual" under the ADA (ECF No. 100 at 19–23), which is an issue separately raised in the objection (Teleguam Objection at 7–10).

A district court need not consider new evidence that was not before the magistrate judge. *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000), *cert. denied*, 534 U.S. 831 (2001). So if a court need not consider new evidence supporting a previous argument, it almost certainly need not consider new arguments. The Court therefore does not consider this new argument and leaves it to trial.

### 4. Producing Dr. Suguitan as a Witness

Teleguam's fourth objection is essentially to DeWitz's witness list, rather than to the report. The witness list does not include Dr. Suguitan as a witness, so there is no way she can carry her

burden of proof on whether Garcia's injury rendered him unable to stand or sit for prolonged periods. (Teleguam Objection at 7.) But even assuming this is a proper objection to the report, the objection remains meritless.[2] At a minimum, DeWitz herself will be testifying that Garcia could not sit for prolonged periods. (ECF No. 173 at 7.) There may also be similar evidence from a chronology report. (*See id.*) So there is evidence on this point demonstrating a genuine factual issue.

### 5. Qualified Individual

Teleguam's final objection raises two reasons why Garcia is not a qualified individual with a disability under the ADA. This Court overrules the objection and finds there is a genuine issue of material fact on whether Garcia is a qualified individual under the ADA.

A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111(8); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1479 (9th Cir. 1996). Teleguam first claims that Garcia is not a qualified individual because his doctor's report indicated that he could not lift more than ten pounds and that Teleguam was obliged to follow, rather than second guess, this limitation. (Teleguam Objection at 7–8.) It then cites an unpublished Fourth Circuit case for the proposition. (*See id.* (citing *Wulff v. Sentara Healthcare, Inc.*, 513 Fed App'x 267 (4th Cir. 2013)).) But this argument is a non-sequitur. The issue is not about following or questioning the doctor's findings; it is about whether Garcia could perform the essential functions of his job. That is exactly what the Fourth Circuit case was about. *See Wulff*, 513 Fed. App'x at 270 ("Therefore, under the

---

[2] This objection may also lack merit because Teleguam's witness list—at the time of filing its objection—indicated it may call Dr. Suguitan as a witness (ECF No. 152 at 2), and DeWitz's list indicated she may call any witness listed on Teleguam's list. (ECF No. 151 at 4.) Since then, however, Teleguam has filed a new witness list that omitted Dr. Suguitan. (S*ee* ECF No. 160.)

10

restrictions noted on the March 24 form, Wulff was unable to perform the essential functions of her position, and she does not suggest any reasonable accommodation that would have allowed her to do so."). Ninth Circuit law says the same. *See Kennedy*, 90 F.3d at 1482 ("Because she was totally disabled, there was no genuine issue that she could have performed her job with the proposed, or any other, accommodation."). There is evidence indicating that Garcia could still perform most of his job with reasonable accommodations. (*See* Report on SJ at 14.) Whether this suffices is a question for the factfinder.

Teleguam's next argument does three things. First, it points out a disputed claim in the motions suggesting that Dr. Taniguchi was Teleguam's agent. (Teleguam Objection at 9.) It then asserts that because this doctor was not Teleguam's agent, his medical report cannot impute knowledge of Garcia's injuries and their extent to Teleguam. (*See id.* at 9–10.) Then, somehow (Teleguam does not say how) this inability to impute alone means that Garcia was not a qualified individual. (*See id.* at 8–10.)

The Court disagrees with Teleguam. Whether or not Teleguam can be deemed to know the contents of Taniguchi's report, the report still shows that Garcia would soon be back to his pre-accident condition. This in turn suggests that Garcia is a qualified individual because he would soon be able to perform *all* his job responsibilities, and reasonable accommodation may have been just waiting till that impending day. (*See* Report on SJ at 15.)

## IV. CONCLUSION

For the foregoing reasons, the report and recommendations are adopted in full. The Court sustains Teleguam's objection on adverse employment actions (Part III.B.2) and therefore grants summary judgment to the effect that failure to give notice of the termination is not an adverse

11

employment act under the ADA. All other objections are overruled. DeWitz's third claim, breach of the employment agreement, is dismissed with prejudice.

SO ORDERED this 3rd day of July, 2014.

                                          /s/ Ramona V. Manglona
                                          RAMONA V. MANGLONA
                                          Designated Judge